oral argument not to exceed 15 minutes per side. Miles Illick for the appellant you may proceed. May it please the court it's nice to be here in Kentucky instead of down in New Orleans where I'm normally arguing. It's nice to have a change of venue for me. So thank you for having us. As I said my name is Miles Illick. I represent the appellant Ashley Grayson. I have four issues before the court this morning and 13 minutes to do it. I hope to touch on each one of those but I am going to do it in the order of priority which is the order I presented them in my brief. In my first issue we have argued that the trial court erred in admitting improperly authenticated evidence and specifically we're talking about we're specifically talking about the FaceTime video. The question here really is whether there is a requirement in authentication under Rule 901 for a duplicate for there to be some evidence early on that this is an accurate copy, a correct copy, a true and correct copy. I'm not arguing for magic words. I realize that's an argument that's been presented. I'm not. But counsel I'm sure you try cases and the standard for Rule 901 is pretty low. It's evidence sufficient to support a finding that the item is what the proponent claims it is and Johnson testified that that's exactly what it was. I get that 25 seconds were cut out by the transfer maliciously however you want to say it. But that ultimately it seems to me doesn't go to authentication because she's saying this is what I claim it is. Well Judge Zafar I think that what she's claiming it to be is a true and accurate copy of the original especially when it's first offered. When it's first offered there's no discussion about the missing 26 seconds. Now the judge knows that because it was in pretrial briefing but when it's being offered initially it's being. So can I ask you if she would have said this is the first segment and this is a true and accurate copy of the first two and a half minutes it's then missing I'm guesstimating the time then 26 seconds and then a true and accurate copy of the second two and a half minutes. You're saying that would have been OK. I think that would have gotten us a lot closer to it. But what I'm saying here is that we've got a video that comes in that defines the outcome of this case. This video is the is the defining aspect of this case and it's missing 26 seconds. I don't blame the government for that. I don't think they've ever seen it. My clients never seen it. I've never seen it. We've got an incomplete video that came in that video. The original existed. That video was out there. It got deleted. Now we have a duplicate. We have a duplicate coming in that is an incomplete video and I think this can be looked at as a technicality as a minor issue. But when we live in a period where a really unsophisticated person can go into a light room or can go into Photoshop or can go into Adobe and can amend and change and cut videos, I think it's really critical that when we're talking about... But is there some indication that that's what happened here? What is on this 26 seconds? No one knows. Does your client know? Who was on the call? Is there something? I don't want to dodge the question. I don't think I can say what my client knows and doesn't know about that. Fair enough. I've seen no indication that there's something impactful in this. But that's the exact problem, Your Honor. And that is, I don't think they know what's on it. I think if you ask them, they'll honestly tell you they don't know what's on it. They didn't see it. It came to them with 26 seconds missing. It came to us with 26 seconds missing. The person who is trying to extort my client in this, if we accept that... But did Johnson testify? I mean, she testified, right? She testified. What did she say? She says it's meaningless, right? But we don't know, right? She could get up there and talk about the video. She can get up there and do this. But to play an incomplete video that has not been, in my mind, properly authenticated, that the government has said is the most important evidence, I think goes to really the fairness part. Well, why doesn't that just go to weight? I mean, why can't the jury weigh that? You can cross her on it. The first two and a half minutes, your client doesn't contest that AI made it. Right? Never in trial did you say this is a fabrication. It's fake. The first two and a half minutes, no one contests. The last two and a half minutes, no one contests. And the jury can weigh all that and decide what you can suggest what happened during the 26 seconds. Well, Judge Tappara, with all due respect, and I disagree, I think that authentication requires some evidence that this is what it purports to be. And what it purports to be is a true and accurate copy, a true and accurate representation, whatever, of the original. And we don't have that. Whether it's missing the 26 seconds or not, when you look at the questions, and the government has put the transcript in their brief for you, when you look at the questions that are given, and I pulled it out, you get questions like was this the one recorded? I believe it was the recorded. I don't know. Whose phone did you use? What kind of phone did you have? Have you looked at the video? Yes. Do you recognize the disk? Yes. Whose initials are on the disk? My initials. This is not 901 authentication. They do not get there on 901 authentication because they never talk about this being an accurate, complete, whatever, version of the video. If we even forget about the 26 seconds. Can I ask you, I mean, let's say you're right. Let's say we reverse and it goes back. It seems to me they can still get the video and they just say is this a true and accurate depiction of the first two and a half minutes? Yes. Is this a true and accurate depiction of the last two and a half minutes? Yes. Are there 20 seconds missing? Yes. From the whole thing. Why were they missing? She explains. Okay. I offer this, the first part is the true and accurate depiction. The second part is the true and accurate. Well, I think that would run into the argument that hits with, that we discussed with 1003 of the Federal Rules of Evidence. When we talk about duplicate versus original, we know that Rule 1001 and 102 say you have to have an original, but sometimes you can have a duplicate. Then you go to 1004 that says, hey, you can have a duplicate as long as it doesn't go to the core of the issue. And then you go to 1003 that says, hey, you can have a duplicate as long as it is not unfair to one party. I think what we have here is a duplicate that is unfair to one party, because it comes to the government incomplete, the government gives it to us incomplete. We have no idea what is in the missing 26 seconds. And to suggest, and the Court hasn't suggested this, but just to preempt the suggestion, that 26 seconds couldn't be important, or that 26 seconds couldn't change the entire interpretation or understanding of the video, I think is disingenuous. We don't know what's in that 26 seconds. I don't think we can assume . . . I guess, I mean, my view on this is, along the lines of what Judge Sapar asked, we have four and a half minutes of, like, really terrific evidence in a sense, right? Like, what's more valuable than a recording of the actual conversation that occurred? An accurate recording. Yeah, and you want to keep the entire thing out because 30 seconds was excluded. Absolutely. And that might go to wait. You can make, I mean, I don't think you've really made arguments that they nefariously did this, that there was anything important in those 30 seconds. So your argument that the jury can't have this terrific evidence, which there are evidentiary rules which appropriately should exclude evidence that's going to mislead the jury or is not what it says it is, but it doesn't really feel like there's any disagreement. We all know what this is. And you don't want the jury to have any of this evidence because of 30 seconds that we don't know what's there. And if you could put on evidence to say, here's what's missing. It was this really helpful evidence to my client or whatnot. Or you could put on evidence that they fabricated this video or something. None of that really happens. So it's just kind of hard for me to get my head around the idea that the jury shouldn't get to have this very valuable evidence when you really haven't made any points. You made some technical points, but really it's like substantive points about how this would harm your client. Well, the only answer I can give you is that when we don't know what something is, I don't think that we can assume. Well, there's a lot of things we don't know. Just all these things at trials we don't know. And you argued to the jury, you know, we don't know that. And you need to, you know, you need to, so there's not reasonable, it's not beyond a reasonable doubt that my client was guilty. All right. Well, Your Honor, I have to respectfully disagree. I think that ultimately it goes to authentication. There's a duty to present a correct and complete version of it. It feels very technical. It feels very technical, I guess. Sometimes foot faults, let me finish. Sometimes foot faults do matter, but it's hard for me to hear in this case, it's really hard for me to understand why it should matter. And I'm trying, and forgive me for interrupting, it's a natural habit, but the reason it should matter is that any unsophisticated user of a program like Lightroom or Adobe, I can put drugs in it. Is there evidence that that happened here, or did you present any evidence or attack Nobody knows. Nobody knows. But any, the reason it matters is that an unsophisticated user of Even if it was the full five minutes, it still could have been fabricated in some way or  Well, that's what, there's nothing in, in this that talks about, well, if you get away from the 26 seconds, there's nothing that talks about the duplicate being an accurate representation of the original. Even if you're not focused on the 26 seconds, there's nothing saying that things weren't added to it, things weren't taken out of it. There's nothing in the questions that go to authentication that says that the underlying duplicated video, even if we forget about the 26 seconds, is accurate. And I'm, that's the point I'm really trying to make. Your job, is it your job to raise those issues to the district court or present those questions? No, it is not, Your Honor. It is the job of the proponent of the evidence to offer that to the district court to say, Your, Your Honor, we have, we have evidence, we, this, we're coming forward with this, it's true and accurate. And to their credit, they didn't ask that question to the witness because they knew it wasn't complete. They didn't want to put any false testimony on, they didn't want to mislead the court, so they didn't ask the questions. Is this an accurate reporting? Is it, is it a complete, complete's the wrong word, but is it a true and accurate? Has anything been changed? Has anything been added? They don't go into those questions. And you can look at the testimony and forget about the 26 seconds if you want, and you can say, is this a true and accurate copy? That is not in the question. So it, just as if I brought up a book that said this is titled Ulysses, somebody would need to say, well, is it a true and accurate copy in order for you to believe it? Just because it's titled, that doesn't mean it is what it is. So I don't think it's a simple issue of, I can see how it's a technicality, I can see how it feels narrow in the context of the significance of this evidence, but in a period where we can change videos, where we can change images, where I can add drugs to an image, I can take drugs out, I can add people to a video, I can take people out. As an unsophisticated user, I can do these things. It's really important to talk about a duplicate being an accurate representation of the original. Now if I can turn, if there are no further questions on that point, I'll turn just very quickly to my second argument, and that is the question for the mistrial. I don't think the issues are really in dispute. I don't think counsel for the government will get up and say that we disagree on the law or we disagree on the facts. But generally we say curative instructions are enough, and here there was a curative instruction. Well, Judge Tapar, there was a curative instruction, and I think that that's the point here, that this is an apt case to talk about what is an appropriate curative instruction. Because we don't have the judge simply turning to the jury saying, jury, please disregard the last statement that was made. We have this long-lining soliloquy that really dilutes the significance of the curative instruction and goes to, I mean, goes on for pages about previous cases and all this other stuff. All you have to do is turn to the jury and say, please disregard that last statement. This is . . . But what about Frederick? I mean, that case seems much more egregious than this one. Well, Frederick, I think we have Frederick, Martin, and Yates, and I see that I'm down to five seconds. May I . . . You can finish quickly and then you can use your rebuttal. I think that these provide the bookends and they give you the opportunity to put this on the spectrum. But none of those three talk about really what should be in a curative instruction. This case gives you the opportunity to do so. Okay. Anything further? Thank you, counsel. Thank you. Good morning, and may it please the Court, Neal Oldham for the United States of America. If I could address the issues that counsel just addressed. The United States believes that the video of the FaceTime recording was properly emitted into evidence. It was authenticated through the witness, Olivia Johnson. I mean, isn't it problematic, though, that 26 seconds are missing? Absolutely, Your Honor. It is problematic, and the United States had nothing to do with that time missing. It is in duplicate under 1003. There is no question of the authenticity, and there's been no proof that there's anything on that that would be advantageous or not having that was a detriment to defense counsel. Also, it would come in under Rule 1004 of contents of the original. Even if you don't have the original, that information was going to come in at trial. This could be contents of what was on the original, because the original is missing at that point. Rule 1007 allows to authenticate, the proponent may prove the content of a writing using the statement, a deposition, written statement or testimony of the person against whom that statement is meant. Now, I know I don't have a written statement, but we have a verbal statement to the FBI where Ms. Grayson calls in and says, they have a recording of me, and here are the things I'm talking about. It's authenticated through that. It shows the evidence of what would be in that video. Of course, that 26 seconds, it would be better if it was there. We would have avoided these issues, but defense counsel had an opportunity to cross-examine on that issue. That issue was brought up, and the witness who recorded said, this happened as a normal function of me sending this over. There was no evidence of any malicious intent or her editing at all. That is the reason that that statement was properly admitted, and the defense counsel was given an opportunity to ask questions. So, that . . . I mean, his point, I think, in response would be that there were more questions you were supposed to ask to authenticate the videos that you didn't ask, irrespective of what his opportunity is to sort of cross, that you have . . . there's some threshold you have to meet that you didn't meet through your questioning. I believe that we did meet it. This is in the context of the totality of the testimony to that point. Ms. Johnson had said, I was in Dallas, and we discussed using FaceTime to be the means in which we communicate about the murder for hire that she wanted me to do, me and my husband to do. There were text messages also, where a couple of times when Ms. Johnson tried to get Ms. Grayson to type out, for lack of a better term, what was going to happen in the murder for hire plot, where they spoke about FaceTime. And then coming up to the video being emitted, we leave those messages, okay, well what happened in this instance? We FaceTimed, and have you seen this? Whose phone did you use to record? Whose phone did you use for the FaceTime? Was there a recording made? Yes. Have you seen this video before? Yes. What is that, the FaceTime call? She's a person with knowledge. Also, if we look at it through the telephone aspect, she is a person that's part of that conversation, and so that is properly authenticated, and then it was properly left to the jury. Authentication is essentially a question of conditional relevance, and the jury will ultimately resolve whether the evidence emitted for its consideration is what the proponent claims, and that's the Fultz case. So we believe that it was properly emitted. We made a promulgation showing that the video was the video. No, I did not ask if it was a true or accurate copy, because I acknowledge that it was not the complete copy, but it is an accurate duplicate. That information was going to come in anyways. It's a party-opponent omission. It's an exception to hearsay. All that information was going to come in at the trial. This is different than cases cited by defense, because this is a mission made against interest and a party-opponent omission. That stuff was going to come in anyways, and the best way to produce that information is to show the video, sans the 26 seconds that we wish was there, but nobody ever said that there was anything missing that would have substantially hurt or helped anybody. Can I ask you just, did Johnson get testimonial immunity or some kind of broader immunity? She had no immunity, Your Honor. Johnson had no immunity? I thought she was given some level of immunity. No, Your Honor. There was questions about what was going to happen to her with her state case and whether or not the United States had spoken with the state of Tennessee about other cases. We had not. She had never asked for that. So you did, did you have a proffer letter with her, but you never gave her testimonial immunity or pocket immunity? That's right, Your Honor. Okay. Can I ask you another question just about Murdoch? Here, it seems to me she created the record for extortion, right? I mean, that was the understanding of why she was creating it. And under the plain language of the federal wiretap law, it says it's not permitted if such a communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States. Why shouldn't we construe Murdoch as narrowly as possible? And could we, and you can, I guess we can discuss the wife in Murdoch, but could we say that Murdoch is limited because the decision never discusses per se a criminal act committed by the wife? Does that make sense? Yes, Your Honor. First, and I promise I will answer your question, the United States does not concede that this is an interception. Okay, but interceptions, acquisition, or, you know, I mean, it's pretty broad. Your Honor, the Title III Act is to protect privacy. Ms. Grayson had no privacy interest on a FaceTime call out loud where anybody in the area could hear it. I saw you made that argument in your brief. I guess the one thing I would say is when Johnson and Grayson agreed to use FaceTime, it was for privacy reasons, right? It was so nobody could track the communication and there'd be no record of the communication. But if you go about speaking to somebody out loud in front, if I took my phone out right here and started FaceTiming, everybody in this courtroom would be privy to that conversation, so would I have an expectation of privacy? But interception is defined as an acquisition of contents of any wire, electric, or aural communications. Yes, Your Honor. And this is not what they meant. This was an interception that was, this was a recording of somebody having a conversation. But I'll turn, Your Honor, to the Murdoch question. Murdoch, Title III gives more protections than the Fourth Amendment, but we need to use, and I think Murdoch says this, we need to use the Fourth Amendment as a guide on how to handle these Third Amendment, or Title III questions. So with Murdoch, they do apply the clean hand exception to this 2515 issue of the U.S. Aren't we split with many of the circuits on that? Absolutely, Your Honor. You would agree we considered legislative history in Murdoch, I mean, things we don't consider anymore. Your Honor, I think that the Murdoch case, which is controlling for the Sixth Circuit, was properly considered with the legislative history. And I think that was instructive on how to view it. The cases cited by defense went too far in saying there was an absolute prohibition no matter how this evidence was procured and who procured it. It was an absolute prohibition against it. And that is not what usually, because this is a privacy act, usually what the Fourth Amendment proponent is not the government and is brought to the government. So I think that the Sixth Circuit in Murdoch got it correct and that line of reasoning is something that we should maintain in this case. If I could turn finally to the curative instruction and the issue with the instruction given by court, I think defense counsel talked about how long the curative instruction was. And I think context is important. U.S. v. Ross says, no single provision of the jury charge may be viewed in isolation. Rather the charge must be considered as a whole. At this point in the case, this was a preliminary jury charge. I think that's important to know it's a preliminary. This was at the end of jury selection in the preliminary jury instruction. That was 454 pages of transcript of the district court judge almost being the only person who spoke the whole time. His preliminary instruction was 22 pages and the curative instruction was three pages. So that's over a day and a half of the district court judge speaking and 479 pages of transcript. The district court judge was loquacious and he spoke a lot and him speaking to the jury for three pages of transcript wouldn't have been out of the normal for what they'd experienced to that point. He gave this, his statement was, I suppose if they had a recording that says I'm going to kill somebody, that might be important. Well that was in the context of how to, how to come to the proper mental state on what things might be important. He was trying to use that as an example of usually we don't know what somebody's thinking and I guess we had a recording. It was an offhand comment he made. I don't think he was even trying to direct the jury's attention to the importance of that statement. However, if he did, that was allowable under Frederick. That statement was always going to be important. Now, in their brief, counsel did quote me at a sidebar saying that's the entire case. In the context of that was, this had just happened and I wanted the judge to understand it was important that a curative instruction be made, but I didn't want, I don't want to leave this court with the impression that was our entire case. We had Grayson and her, I mean Johnson and her husband traveling to Dallas. Her testifying that they offered to give us this money if we kill somebody. Us deciding to use FaceTime. Us coming back. The FaceTime text messages, which are very important. The FaceTime video, which was important. Then their travel back to Dallas, a video of them in the lobby of Grayson's husband's apartment where they received $10,000 in testimony of that. A subsequent falling out between the two. A video sent to Grayson, at least a portion of the video that we're talking about. A call by Grayson to the FBI. A long recording of her admitting that there was a video and the things that she said to it in a roundabout way. There was also evidence that she sent that to Johnson and then Johnson came forward. While the video is an important piece and it does show the actus reus, it's not the mens rea that the judge was speaking to. Even if the judge made an improper comment, and I think he roundaboutly admitted it, he was, then he gave a curative instruction that was a prompt and explicit curative instruction. He also made it clear to the jury that on many occasions during that time, that was their job to determine the evidence in the case and decide the case based on their evidence. There were at least six different times in that preliminary jury instruction where he made it clear to the jury that it was their province to decide the evidence, to use that evidence to decide the case. He also gave the curative instruction. More than that, and different from the other cases, this was the preliminary instruction. He gave the right instruction at the end of the case for the proper mental state and didn't use any other language that could be problematic unlike the other cases. I see that my time is almost up. May I answer any further questions for the panel? Any further questions? Thank you, counsel. Thank you all very much. All right. Very quickly, I would ask the court when they go back and consider this and look at this to go to pages 17 through 19 of the government's brief. When you go there, I'm talking about the authentication issue again. When you go there, forget about the 26 seconds, look and see if there are any questions that ask about whether or not this is an accurate copy, whether or not the duplicate is correct, whether or not there have been any changes to it. You can look at pages 17 through 19 of their brief and you will not see those questions asked. That is just independently of the missing 26 seconds. I just forget the record, but you objected then on those grounds? No, we didn't object, Your Honor, because it was the proponent's obligation, the proponent of the evidence, it was their burden to show authenticity. We can sit back and remain quiet and allow them to do it. We did object. I'm sorry, maybe I answered that question incorrectly. We did then object that the video was not properly authenticated under 901. I have a minute left. There's really not anything else I can add to that in that time. If there are no questions, I'll yield the balance of my time to the court. Any further questions? Thank you, counsel. Thank you both very much for your thoughtful arguments. The case will be submitted.